IN THE UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

IN RE: JONATHAN KEITH STARNES, Debtor            No. 5:16-bk-71406
                                                  Ch. 13

JENNIFER STARNES                                   PLAINTIFF

v.                    5:17-ap-7011

JONATHAN KEITH STARNES                             DEFENDANT

OPINION AND ORDER
DENYING COMPLAINT TO DETERMINE DISCHARGEABILITY
AND
DENYING CONFIRMATION OF DEBTOR'S PLAN

On February 28, 2017, the debtor's ex-spouse, Jennifer Starnes, filed a complaint to determine the dischargeability of a debt related to payments on a 2010 Dodge Charger. According to Ms. Starnes, the debtor's obligation to pay the debt, which was memorialized in the parties' Decree of Absolute Divorce, was in the nature of a domestic support obligation [DSO] and non-dischargeable in the debtor's chapter 13 bankruptcy case. On March 30, 2017, the debtor filed his answer to the complaint denying Ms. Starnes's allegations.

On March 7, 2017, after the complaint was filed but before the debtor filed his answer, the debtor amended a number of his schedules and amended his proposed chapter 13 plan, most notably lowering the commitment period from 60 months to 36 months and increasing a payment for his truck. Both the chapter 13 trustee and Ms. Starnes objected to confirmation of the amended plan. The trustee's objection related primarily to the debtor's tax returns and some expenses the debtor was now claiming in the amended schedules as they related to money available for the benefit of creditors. Ms. Starnes's objection related to her claim that the debt owed for the Charger was a DSO and specific payment should have been provided for her in the debtor's plan. She also alleged that as

a result of the debtor's failure to disclose all of his assets, transfers, and pre-petition payments, the debtor did not file his plan or his petition in good faith under 11 U.S.C. § 1325(a)(3) or (a)(7). The Court heard the adversary proceeding and the objections to confirmation of the debtor's plan together on September 19, 2017. For the reasons stated below, the Court denies Ms. Starnes's complaint to determine dischargeability and sustains the trustee's and Ms. Starnes's objections to confirmation. The debtor shall have twenty-one days to amend his schedules and propose a confirmable plan.

The Court has jurisdiction over this matter under 28 U.S.C. § 1334 and 28 U.S.C. § 157, and it is a core proceeding under 28 U.S.C. § 157(b)(2)(I) and (L). The following opinion constitutes findings of fact and conclusions of law in accordance with Federal Rule of Bankruptcy Procedure 7052.

**BACKGROUND**

The debtor and Ms. Starnes were divorced on August 5, 2015, after an 18 year marriage. According to the divorce decree, the parties were to have joint custody of their two children and were to equitably split the children's expenses. The debtor was to continue making payments on the 2010 Charger and keep it insured until it was paid off. The debtor was awarded ownership of the parties' marital residence with an obligation to pay Ms. Starnes one-half of the current equity in the house (an amount that was not disclosed in the decree), "less the amount paid toward [Ms. Starnes's] automobile." The decree also stated that "[n]either party needs nor is the other able to pay alimony or spousal support."

On May 24, 2016, the parties entered into an agreed order of modification which primarily addresses the visitation schedule for the children. Included in the agreed modification is the statement that "[d]ue to the parties having joint custody, similar economic situations, and the shared time with the minor children, neither party is to pay child support to the other." The only paragraph that does not relate specifically to the children and visitation states:

2

> Property issues raised in pleadings are unchanged from the Decree except for the following clarification: the payments for the Dodge Charger are in exchange for any equity remaining in the parties' formal [sic] marital home. Upon complete payoff of the vehicle, [Ms. Starnes] shall execute a Quitclaim Deed of the parties' marital home in favor of the [debtor] within 30 days. After the loan balance is paid in full, [Ms. Starnes] shall be responsible for her own insurance.

On June 11, 2016, less than three weeks after the agreed order of modification was filed of record, the debtor filed a voluntary chapter 7 petition. On July 11, 2017, the chapter 7 trustee filed his "no-asset report." On November 28, 2016, the debtor filed a motion to convert his case to a case under chapter 13. The debtor's reason for the conversion was to work out a "reasonable repayment of the debt owed to Northwest Arkansas Federal Credit Union which is secured by vehicles." The debtor also stated that he was "unable to agree on valuation of a Divorce Decree property distribution with his former spouse and co-debtor . . . ." The Court granted the debtor's motion to convert on December 21, 2016.

On January 5, 2017, the debtor filed his first chapter 13 plan, which drew objections from the chapter 13 trustee, Ms. Starnes, and Northwest Arkansas Federal Credit Union [the credit union]. Also on January 5, and again on January 6, the debtor filed his first set of amended schedules. Ms. Starnes filed her complaint to determine the dischargeability of her alleged DSO on February 28. One week later, on March 7, the debtor filed his second amended chapter 13 plan and again amended a number of his schedules. In addition to reducing his plan from 60 months to 36 months, the debtor reduced the amount to be paid to his attorney through the plan and increased the amount to be paid to the credit union through the plan, apparently satisfying the credit union's objection. The debtor also recognized that the 2010 Dodge Charger, the payments for which he is obligated to pay under the terms of the divorce decree, had been surrendered to the credit union. The chapter 13 trustee and Ms. Starnes each objected to the confirmation of the debtor's second plan.

**COMPLAINT TO DETERMINE DISCHARGEABILITY**

The Court will first address Ms. Starnes's complaint to determine the dischargeability of the debtor's obligation to pay for the 2010 Charger. The parties' Decree of Absolute Divorce states unequivocally that the debtor was to continue making payments on the 2010 Charger and keep it insured. The decree also states that neither party "needs nor is the other party able to pay alimony or spousal support." Although Ms. Starnes was not represented by counsel when the decree was entered, she did sign the decree stating that she approved of the decree "as to form and content." Less than one year later, the parties entered into an Agreed Order of Modification. At this time, Ms. Starnes was represented by counsel. The agreed order made it clear that the debtor's payments for the Dodge Charger were in exchange for any equity that remained in the parties' marital home.

Whether a particular debt is a support obligation or part of a property settlement agreement is a matter of federal bankruptcy law, not state law. *Tatge v. Tatge* (*In re Tatge*), 212 B.R. 604, 608 (B.A.P. 8th Cir. 1997) (citing *Williams v. Williams* (*In re Williams*), 703 F.2d 1055, 1056 (8th Cir. 1983)). The determination of whether the award was intended to serve as a DSO or as property settlement is a question of fact to be decided by the bankruptcy court. *Phegley v. Phegley* (*In re Phegley*), 443 B.R. 154, 156 (B.A.P. 8th Cir. 2011) (citing *In re Tatge*, 212 B.R. at 608). In this case, the parties agreed and the state court found that neither party needed alimony or spousal support. Less than a year later, and again with the agreement of the parties, the state court clarified its ruling concerning the payments for the Charger to make clear that the payments were "in exchange for any equity remaining in the parties' . . . marital home." Although a state court's characterization of an award is not binding on the bankruptcy court, it is "a starting point for the determination of the award's intended function." *In re Phegley*, 443 B.R. at 158. The burden of proof is on the party asserting that the debt is non-dischargeable. *Id.*

The Court finds that Ms. Starnes has failed to meet her burden. Ms. Starnes testified that she was a "stay at home mom" for eight years but was employed at the time the parties

4

divorced. She was earning $8.50 an hour compared to the debtor's approximately $22.00 an hour. According to Ms. Starnes, the debtor had a 401(k) account at the time of the divorce worth approximately $20,000–which remained in the debtor's name after the divorce–and the debtor received the marital home. Despite these economic differences, Ms. Starnes agreed that she did not need spousal support at the time of the divorce and the state court approved the parties proposed decree of divorce. Related specifically to the payments that Ms. Starnes is now alleging to be a DSO, the state court entered its *agreed* order of modification that states unequivocally that the payments for the Dodge Charger are in exchange for the equity that remained in the parties' marital home; in other words, an attempt to balance the division of property. The crucial question for a bankruptcy court is what "the function the award was intended to serve." *In re Phegley*, 443 B.R. at 157 (citing *Adams v. Zentz*, 963 F.2d 197, 200 (8th Cir. 1992) and other cases). In this instance, the Court finds that the function of the payments the debtor was ordered to make to Ms. Starnes were intended to balance the division of property between the debtor and Ms. Starnes. As such, the Court finds that the debtor's obligation to pay the debt on the Dodge Charger is in the nature of a property settlement agreement and dischargeable in the debtor's chapter 13 bankruptcy case upon completion of the debtor's obligations under a confirmed plan. For these reasons, the Court denies Ms. Starnes's complaint seeking a determination that the debt owed to her is a nondischargeable DSO under § 523(a)(5).

**OBJECTIONS TO CONFIRMATION OF THE DEBTOR'S PLAN**

On March 7, 2017, the debtor filed his Second Amended Chapter 13 Plan in this case. In it, he proposes to pay $275.56 per month as a "direct pay" to the trustee for no longer than 36 months. He also proposes for the trustee to pay his credit union $77.26 a month on a scheduled debt of $4635.74. No payments are to be made to the credit union for the 2010 Dodge Charger unless the credit union files a claim for any deficiency that remains after the debtor surrendered the vehicle. Finally, the debtor proposes to pay his home mortgage to U.S. Bank N.A. "outside the plan." The debtor makes no provision to pay unsecured creditors in his plan. Only the credit union, U.S. Bank, N.A., and Ms. Starnes

have filed claims in the debtor's case.  Ms. Starnes has objected to confirmation of the debtor's proposed plan primarily based on the debtor not filing his plan in good faith as required by § 1325(a)(3) and not filing his petition in good faith as required by § 1325(a)(7).  The trustee has also objected to the debtor's plan.  The trustee's objections are predominantly based on the debtor omitting and incorrectly stating information on his schedules and statements, failing to commit all of his disposable income to the payment of unsecured creditors in contravention of § 1325(b)(1), failing to provide the trustee with tax returns and information about his annual tax refunds, and failing to treat his obligations to Ms. Starnes and the credit union as domestic support obligations.  A review of the debtor's schedules, including amendments filed during the case, and his testimony at trial makes it clear to the Court that the debtor's plan as proposed cannot be confirmed.

To begin, the Court finds that the debtor has not proposed his plan in good faith as required for confirmation under § 1325(a)(3).  For purposes of § 1325, the debtor bears the burden of proving good faith.  *In re Mattson*, 241 B.R. 629, 635 (Bankr. D. Minn. 1999) (citing *In re Love*, 957 F.2d 1350, 1355 (7th Cir. 1992)).  Subsection (a)(3) "tests the reasonableness of the plan and the sincerity of the debtor with respect to that particular plan."  *In re Powers*, 554 B.R. 41, 59 (Bankr. N.D.N.Y. 2016).  Here, despite knowing that he is obligated to pay his ex-spouse, the debtor's proposed plan does not provide for the payment of unsecured creditors at all.  Perhaps this is just an oversight by the debtor's counsel, but the Court believes that finding a way to pay (or not pay) his ex-spouse was certainly on the debtor's mind when he filed this plan.  Additionally, the debtor is an above-median income debtor according to both the chapter 13 trustee and the Statement of Current Monthly Income filed by the debtor on March 7, 2017.  As such, the debtor's applicable commitment period [ACP] is five years, not three.  Yet, hours after the debtor filed a Statement of Current Monthly Income showing that his ACP should be five years, he proposed the three-year plan currently before the Court.  The debtor's proposal of a three-year plan in this case is not only indicative of a lack of good faith under § 1325(a)(3), but is also at odds with § 1325(b)(1)(B).

Section 1325(b)(1)(B) provides in relevant part that a court may not confirm a plan that has drawn an objection by the trustee or the holder of an allowed unsecured claim unless "all of the debtor's projected disposable income to be received in the applicable commitment period . . . will be applied to make payments to unsecured creditors under the plan." 11 U.S.C. § 1325(b)(1)(B). Here, not only has the debtor proposed a plan with an improperly truncated ACP, but, as explained below, he has failed to commit all of his disposable income to the payment of unsecured creditors.

The debtor has proposed to pay $275.56 a month to the chapter 13 trustee, which he contends is his disposable income after deducting expenses. This would result in a payment of approximately $16,500.00 over five years. However, the debtor's actual disposable income is well over $275.56 because many of the expenses reported by the debtor were inflated, not allowed, or being paid elsewhere. For instance:

| | |
|---|---|
| $183.00 | truck payment is listed on Schedule J and is proposed to be paid by the trustee |
| $100.00 | attorney fee payment is also being paid as an administrative expense |
| $199.00 | health insurance payment is listed on Schedule J and is also being deducted from the debtor's pay |
| $150.00 | payment of non-filing spouse's medical bills is questionable |
| $200.00 | estimated reduction of current $537/month phone bill |
| $832.00 | additional disposable income |

The inclusion of this $832.00 a month to the current proposed payment to the trustee of $275.56 a month would result in a payment to the trustee of over $1000.00 a month. Over a five-year period this would result in a payment to the trustee of approximately $60,000.00, rather than $16,500.00. This amount is more than enough to pay Ms. Starnes's and the credit union's unsecured claims, which total approximately $10,250.00; the credit union's secured claims, which total approximately $4750.00; and the chapter 13 trustee fee in full.[1]

---

[1] Even though the debtor's ACP is five years, he could reduce that time by providing in his plan to pay his unsecured creditors in full in accord with § 1325(b)(4)(B).

7

**CONCLUSION**

The Court denies Ms. Starnes's complaint to determine dischargeability. The Court further denies confirmation of the debtor's current plan because it does not comply with § 1325(a)(3) or § 1325(b)(1)(B).[2] However, because the debtor has the ability to propose a confirmable plan that would ensure payment to his creditors, the debtor shall have twenty-one days from the date of this order to amend his schedules and statements to remedy the omissions and inaccuracies brought to light during the September 19 hearing–whether mentioned specifically in this order or not–and to propose a confirmable plan.[3]

IT IS SO ORDERED.

*Ben Barry*
Ben Barry
United States Bankruptcy Judge
Dated: 10/23/2017

cc: Charles W. Pearce
Jonathan Keith Starnes
Theresa L. Pockrus
Joyce B. Babin
Kyle Unser

---

[2] Because a chapter 13 plan must meet every requirement stated in § 1325 to be confirmed, the Court need not reach the remaining objections to confirmation alleged by Ms. Starnes and the trustee.

[3] The Court recognizes that Ms. Starnes requested in her objection to confirmation that the Court dismiss the debtor's case for "bad faith." However, Ms. Starnes did not move for dismissal under 11 U.S.C. § 1307, but cited only to § 1325(a)(3) and (a)(7)–code sections that provide a basis for the Court to deny confirmation of a debtor's plan but do not, on their own, authorize dismissal. *See In re Powers*, 554 B.R. at 61. Additionally, the Court acknowledges that the trustee stated in her objection that "confirmation of the debtor's plan should be denied and the case should be dismissed pursuant to 11 U.S.C. § 1307 or, alternatively, the Debtor should be given an opportunity to submit an amended plan within a reasonable period of time." Based on the context of the trustee's cite to § 1307, she appears to have been moving under § 1307(c)(5), which provides for dismissal in the event of "denial of confirmation of a plan under section 1325 of this title and denial of a request made for additional time for filing another plan or modification of a plan." *See* 11 U.S.C. § 1307(c)(5). Because the Court has allowed the debtor twenty-one days within which to file an amended plan in accord with the trustee's alternative prayer for relief, dismissal under § 1307(c)(5) is unwarranted.